[Crim. No. 1906.   Third Dist.   Aug. 17, 1945.]

THE PEOPLE, Respondent, v. JOE BURKE, Appellant.

George E. Foote for Appellant.

Robert W. Kenny, Attorney General, and Ward Sullivan, Deputy Attorney General, for Respondent.

THOMPSON, J.—The defendant was charged with murdering Harold Rannells.  A jury convicted him of manslaughter.  In an affray which occurred in Sacramento, September 9, 1944, between the defendant and Harold Rannells the latter was stabbed in the abdomen, as a result of which he died nine days later.  From the judgment of conviction of manslaughter the defendant has appealed.  The only contention of the defendant on appeal is that the verdict and judgment are not supported by the evidence for the chief reason that there is a total lack of evidence indicating that the defendant stabbed the deceased or that the knife with which he was stabbed belonged to the defendant.  The defendant denied that he stabbed the deceased, that he had a knife during the affray or that the knife which was found and received in evidence belonged to him.  But the defendant was impeached by proof that he had been previously con-

victed of a felony, and the jury was entitled to disbelieve his testimony.

■ The judgment is adequately supported by the evidence.

About ten o'clock at night on September 9, 1944, the defendant, who had been in the merchant marine, and his wife, together with their friends, Louis Hill and his wife, were walking westerly on the northern sidewalk of K Street in Sacramento between 6th and 5th Streets. The defendant had been drinking intoxicating liquor to some extent, but he was not noticeably drunk. Two unidentified men, who were not witnesses at the trial, accosted the group and made disparaging remarks about the women. A fight between the defendant and those two men ensued on the sidewalk near the middle of the block. The deceased, Harold Rannells, took no part in that affray. There is no evidence that he even knew the defendant or his assailants. Rannells was then leaning against an automobile parked some distance away near the corner of Sixth and K Streets, from which point he watched the fight. The defendant was knocked down and badly bruised above his eyes and about his face. The defendant bled considerably as a result of the beating. Witnesses testified that they saw a knife or knives in the hands of the strangers during that brawl, but they said the knives were soon put in their pockets and that the defendant was not cut. The inference is that one of the strangers might have subsequently stabbed Rannells. There is no evidence to reasonably support that theory. That contingency is improbable. Evidently the deceased was not acquainted with any of the parties to that affray. He did not participate in that conflict. He stood twenty feet or more away from the location of the fight. No occasion was shown for the strangers to stab the deceased. At least it was the sole province of the jury to determine from the evidence whether it was the defendant who stabbed the deceased in the subsequent affray which occurred between them. The jury concluded that the defendant stabbed the deceased. The evidence supports that conclusion.

After the defendant had been knocked down once or twice by the strangers during that first affray, he and his associates left the scene of that conflict and walked easterly along the sidewalk toward 6th Street. As they passed Rannells, who was leaning against the automobile parked near the corner,

something was evidently said by him. The defendant stopped, turned about and returning to where Rannells stood, he struck him in the face. A violent struggle promptly ensued between the defendant and Rannells. They were striking and clinching each other and scuffling about in a lively manner. Suddenly, in the midst of that affray, the deceased disengaged himself and "hollered out he was stabbed." No one pretends the two strangers who instigated the first conflict with the defendant were then present. The deceased at once pulled up his shirt and at least one witness observed the wound in the abdomen where he had been stabbed. The defendant and his associates promptly left, turning southerly onto 6th Street. Three disinterested witnesses testified substantially to the foregoing facts. There is no evidence to the contrary, except that the defendant and his wife deny that he had a knife or that he stabbed Rannells. Manuel Mauricio, who watched the encounter from a position near by, said: "Burke was walking,—he walked a few feet (after he passed Rannells), then he came back and he struck Rannells; they got in quite a clinch, then pretty soon Rannells comes out hollering that he was stabbed, and Burke had disappeared. . . . He (the deceased) had his shirt up; he said his stomach was stabbed. . . . I seen the stab."

Mr. Yannoyan, a private first class in the United States Army, who was then stationed on duty as a military policeman in that vicinity, in company with Sergeant Fambro, watched the fight from across the street. When the defendant and his wife and friends left the scene of the affray, the soldiers followed them down 6th Street to N Street where they overtook them near an alley. Sergeant Fambro testified that as a military officer he ordered the defendant to stop for the purpose of placing him under arrest; that Burke started toward him in a threatening manner and the witness then drew his revolver and ordered him to "stay back;" that the defendant then had his right hand behind his back and he backed up against the fence at the alley and dropped an object which he held in his right hand over the fence. The defendant was then taken in custody. Ambrose Reyes, who lived close to that alley, heard the commotion and looking from his window he saw the group standing near the fence. After the defendant and the officers had gone, Reyes immediately went down and found the knife in the grass just

over the fence, where the defendant had evidently thrown it. It was subsequently delivered to the officers and received in evidence.

After the affray, the victim, Harold Rannells, was taken to the Emergency Hospital on a stretcher. While he was being questioned there by James Lyons, a police officer, the defendant was brought into their presence. Referring to the defendant Lyons asked Rannells if that was the man who cut him. He replied "That is the man." He declared that he was positive the defendant was the man who cut him. Mr. Burke, who then stood beside the stretcher, failed to deny that charge. He made no reply whatever. Nine days later Rannells died from peritonitis as a result of the wound in his abdomen.

While it is true that no witness testified he actually saw the defendant cut the deceased, or that a knife was seen in the defendant's hands during the melee, it is evident that the deceased was stabbed in the struggle between him and the defendant, for he suddenly abandoned the conflict and declared he had been cut. He immediately pulled up his shirt and exhibited the wound. There was then no other person who could have cut the deceased. The knife was sufficiently identified as the weapon which was used to stab the deceased. The defendant was followed by the Military Police and when he was placed under arrest he backed up to the fence and threw the knife away. It was found immediately afterward over that fence in the grass. Moreover, the deceased charged the defendant in his presence with cutting him, and defendant failed to deny that charge. The evidence is therefore sufficient to identify the knife as the weapon with which the defendant stabbed the deceased. The verdict and judgment of manslaughter are adequately supported by the evidence.

The judgment and the order are affirmed.

Adams, P. J., and Peek, J., concurred.